UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID MUSSALLIHATTILLAH,


                            Plaintiff,

                                                    DECISION AND ORDER
                                                    Pursuant to FED. R. CIV. P. 52(a)(1)

                                                    04-CV-6553L

            v.


MICHAEL P. MC GINNIS,
Superintendent NYS DOCS,
NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES (NYSDOCS),
LARRY WEINGARTNER, Assistant Deputy
Superintendent of Programs,

                            Defendants.
_____


        With the consent of the parties, this action was tried before the Court as a bench trial. Plaintiff,

David Mussallihattillah ("plaintiff"), proceeded *pro se*.[1]

        Plaintiff testified at length and submitted scores of documents in evidence. In addition, two

employees who worked with the plaintiff also testified on his behalf.

        At the close of plaintiff's case on October 22, 2014, defendants moved for judgment as a matter

of law.[2] The Court granted the defendants' motion on the record from the bench and the transcript of that

decision is annexed here as Exhibit "A." As indicated on the record, I advised the parties that I would

submit a written decision. This decision and the oral bench decision constitutes the Court's findings of

fact and conclusions of law pursuant to FED. R. CIV. P. 52(a)(1).

_____

        [1] Plaintiff was originally represented by counsel at the pleading stage but, during the pendency of the action, that
attorney was allowed to withdraw.

        [2] Defendants orally moved under Rule 50, Fed. R. Civ. P. but, since the action was tried without a jury, Rule 52(a)
is the more appropriate rule. The test for entering judgment is the same under both rules.

Plaintiff's complaint and his allegations at trial claim that he suffered a hostile work environment, was terminated from his employment based on his Muslim religion and his African-American race, and suffered retaliation for engaging in a lawsuit alleging discrimination. He, therefore, alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. I find that plaintiff failed to carry his burden of proving that he was subjected to a hostile work environment, adverse employment actions or unlawful retaliation on account of his race, religion, or protected activities.

Plaintiff, an African-American, had been employed by the New York State Department of Correctional Services ("DOCS") since at least 1990. He was employed as a Chaplain or Islamic Imam and had worked in that capacity at several correctional institutions. His most recent employment with DOCS, which is at the heart of this lawsuit, was at the Southport Correctional Facility ("Southport"). Plaintiff was employed there from September 1990 to December 2001 when he was terminated. It is that termination and the facts and circumstances relating to plaintiff's employment at Southport that are at issue here.

As to plaintiff's claim that he was subjected to disparate treatment and was ultimately terminated from his employment at Southport on account of his religion and race, I find that plaintiff has failed to establish any of these claims by a preponderance of the evidence.

Disparate treatment claims are analyzed using the familiar three-step process established by *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802-804 (1973). First, plaintiff must make out a prima facie case by showing that: (1) he belongs to a protected class; (2) he was performing his job satisfactorily; and that (3) he was subjected to an adverse employment action; (4) under circumstances suggesting discrimination. *Id*. If a prima facie case is established, the burden shifts to the defendant employer to show a legitimate, non-discriminatory reason for the adverse employment action. If it does so, then the burden returns to the plaintiff, who must show that the reason proffered by the defendant is pretextual. *Id*.

Plaintiff testified at some length to numerous contacts that he had with the named defendants, Superintendent Michael McGinnis and Deputy Superintendent Larry Weingartner. In plaintiff's view,

virtually every contact with these officials was tinged with their discriminatory animus toward him. Plaintiff testified about numerous incidents occurring during the 1999-2001 time frame. These included the cancellation of a holiday celebration for Muslims in March 2001. This holiday, called Id Ul Adha, was arranged by plaintiff but was cancelled by defendant Weingartner. The reasons for the cancellation are contained in Weingartner's memo of February 28, 2001 (Ex. 203). The reasons articulated were that plaintiff had failed to make proper arrangements for food and failed to properly notify others of the event. There is no indication directly or otherwise that this decision was based on plaintiff's race or religion.

Plaintiff also complained that at some point his telephone calls were monitored, and that others in the institution were directed to check on his status at the facility. Furthermore, plaintiff was required at some point to log into the facility and his identification was checked. There was much testimony about scrutiny of his time and attendance records. The proof, though, demonstrates that plaintiff had significant time and attendance problems and plaintiff did not dispute this. In fact, it appeared from the proof that plaintiff had time and attendance problems at some of the other institutions at which he worked prior to Southport. On cross-examination, plaintiff was shown a document (Exhibit 404) which established that plaintiff had numerous time and attendance problems throughout his career at various correctional facilities. His annual performance reviews consistently noted problem areas, including the fact that plaintiff's attendance was very poor.

On cross-examination, plaintiff indicated that he was transferred to Southport, which he viewed as a promotion. Plaintiff admitted that during 6-7 years of his employment at Southport he lived in Syracuse, New York. He conceded that his residence was about 100 miles from the Southport Facility, and it is clear that much of plaintiff's tardiness was caused by his decision to live many miles and several hours from the facility. Although plaintiff believed he had some health problems that occasioned his tardiness, the evidence indicated that his attendance problems were more attributable to the lengthy commute that he chose. Eventually, in about August 1999, plaintiff did move to Elmira, New York, close to Southport, and stayed there into 2001. After plaintiff moved to Elmira, his time and attendance issues

improved as reflected in Exhibit 171 when he was taken off formal documentation requirements and no longer subjected to special scrutiny.

The evidence also showed that plaintiff had a lengthy history of disciplinary actions and proceedings initiated against him by officials at Southport.  Plaintiff received several "notices of discipline" with recommended sanctions.  By contract and agreement between the State of New York and the Public Employees Federation (of which plaintiff was a member) plaintiff had the right to contest each notice of discipline, file a grievance and submit the matter to arbitration before a neutral arbitrator. Plaintiff took full advantage of his contractual rights in this regard.

Defendants introduced four arbitrators' decisions that flowed from notices of discipline lodged against plaintiff and his subsequent challenge to the charge.  Those include a decision of October 17, 1995 (Exhibit 400); a decision of April 5, 2000 (Exhibit 402); a decision of September 8, 2000 (Exhibit 401); and a decision dated December 13, 2001 (Exhibit 403).

In all four cases, the arbitrator ruled, at least in part, affirming the disciplinary charges.  The October 1995 decision (Exhibit 400) resulted in a 60 day suspension of plaintiff without pay for misconduct.  The arbitrator's decision in September 2000 (Exhibit 401) resulted in a one day suspension for submitting falsified time cards and/or leave requests, and the arbitrator specifically warned plaintiff that future violations could result in termination.  The arbitrator's decision of April 5, 2000 (Exhibit 402) also imposed a lengthy suspension against plaintiff for delivering contraband to an inmate  and also contained a warning concerning future violations.  Finally, the decision of December 13, 2001 (Exhibit 403)  ruled against plaintiff on charges of insubordination and affirmed the recommended sanction of dismissal.  In fact, shortly thereafter, plaintiff was terminated from his employment at Southport.

Although defendants, plaintiff's supervisors, were demanding and often critical, in light of all the problems relating to plaintiff and the findings of three different arbitrators against plaintiff, I find that defendants had a legitimate business reason for taking the actions they did against plaintiff which ultimately resulted in his termination.

So, although plaintiff established the first and third elements of a prima facie case; he is an African-American and a Muslim, and he was subjected to adverse employment actions, I find that he has failed to prove the second and fourth elements by a preponderance of the evidence. He has not demonstrated that he was performing his job satisfactorily and, most importantly, he has failed to produce any evidence whatsoever that he was disciplined, sanctioned or lost his employment as a result of discrimination due to his race or religious faith.

Plaintiff does not allege, and the proof does not demonstrate, that there were any derogatory comments made to him by anyone at Southport relative to his race or religion. Even the two co-workers who testified on plaintiff's behalf could not provide such evidence.

the discipline and his treatment was caused on account of his Muslim faith or his race.

Plaintiff has also failed to offer any proof whatsoever that similarly-situated employees, who suffered the same problems of performance, were not disciplined or were more favorably treated. For example, there is no evidence that other clergymen working along side plaintiff as he went about his duties as an Imam, were treated better than, or differently from, plaintiff. Because plaintiff has failed to make the necessary showing under the second and fourth prongs of *McDonnell Douglas*, plaintiff has failed to make out a prima facie case of disparate treatment under Title VII.

But, even if I were to find that plaintiff had established a prima facie case, after reviewing all the evidence submitted in plaintiff's case, I find that he has failed to carry his ultimate burden by a preponderance to establish that the discipline and his treatment was caused on account of his Muslim faith or his race. Plaintiff also alleges that he was subjected to a hostile work environment. "A hostile work environment exists under Title VII where the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (internal quotation marks omitted), *abrogated on other grounds by Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013). "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the

abuse." *Alfano v. Costello*, 294 F.3d 365 at 374.  "Facially []neutral incidents may be included . . . among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on [an impermissible consideration]." *Id.*, 294 F.3d 365 at 378.  *See also Moll v. Telesector Res. Group, Inc.*, 760 F.3d 198, 203 (2d Cir. 2014); *Howley v. Town of Stratford*, 217 F.3d 141, 155-56 (2d Cir. 2000).

Viewing the defendants' treatment of plaintiff in its totality, the plaintiff has failed to demonstrate that he was subjected to any conduct that was so severe, frequent, offensive, humiliating, intimidating or otherwise objectionable as to create a hostile work environment.   For example, plaintiff makes no allegation that he was insulted, ridiculed or denigrated with racist or anti-Islamic comments or slurs. To the contrary, he testified that the basis of his belief that his workplace was "hostile" stemmed largely from his employer's scrutiny of his attendance.   However, to the extent that plaintiff alleges that his time records were subjected to close scrutiny by his employer, there is no evidence suggesting that this heightened monitoring was occasioned by the plaintiff's race or religion, as opposed to his consistent pattern of tardiness, for which he had already been disciplined on multiple occasions. (For example, there is no evidence that plaintiff's time records were subjected to such scrutiny prior to the issue of his tardiness being identified and pursued through disciplinary action, and it is undisputed that after plaintiff's tardiness abated, so did Southport's scrutiny of plaintiff's timekeeping.")

It was established that plaintiff, represented by counsel, had commenced an action in the Northern District of New York against officials at the Department of Corrections (NDNY Docket 95-CV-1535). That action alleged discrimination in employment, and many incidents relating to plaintiff's employment at several correctional facilities, including Southport, were litigated at that trial.  On January 13, 2000, the jury returned a verdict against plaintiff and in favor of the defendants.  Because of that action, this Court ruled that plaintiff could not in this present action relitigate matters that he had litigated as part of his complaint in the Northern District of New York.

Plaintiff contends that he was subjected to retaliation for having filed and pursued the prior lawsuit against defendants.  Retaliation is prohibited by Title VII, which provides that, "it shall be an

unlawful employment practice for an employer to discriminate against any of his employees… because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. §2000e-3(a).

As with a disparate treatment claim, a retaliation claim is analyzed using a three-step process. First, plaintiff must make out a prima facie case by showing: (1) that he was engaged in an activity protected by Title VII; (2) that his employer was aware of that activity; and (3) that he suffered an adverse employment action; (4) which was causally connected to his protected activity.  *See Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993).  Once plaintiff makes that showing, the employer must come forward with a legitimate, non-retaliatory reason for the adverse employment action.  If it does so, plaintiff must then respond with proof that the reasoning proffered by the employer is pretextual, and that retaliation was the true object of the adverse action.  *See Kwan v. The Andalex Group LLC,* 737 F.3d 834, 846 (2d Cir. 2013) (retaliation must be "but-for" cause of the adverse action)*; Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996).

Plaintiff claims that some of the actions taken against him at Southport, including some disciplinary matters, occurred relatively soon after he resumed employment at Southport after the jury verdict in favor of defendants in January 2000.  Plaintiff has no other evidence, however, that anyone at Southport took any action against plaintiff that was substantially motivated by his prior litigation which, of course, ended favorably to the Department of Corrections and against plaintiff.  To the contrary, the subsequent disciplinary actions against him rested largely on well-substantiated allegations of misconduct, which were for the most part upheld by three different impartial arbitrators..  Because plaintiff has made no showing that his discipline or termination was causally connected to his engagement in prior litigation against the Department of Corrections, plaintiff's retaliation claim fails also.

Plaintiff has also made allegations that he was denied transfers from Southport.  First of all, it does not appear that the named defendants had any say in whether a transfer should be effected.  Plaintiff did make requests for transfer and received responses (Exhibit 252; 257-259).  Deputy Superintendent for Administrative Services, M.P. Corcoran, wrote to plaintiff on July 12, 2001 (Exhibit 257) and denied

his "non-contract grievance" concerning allegations plaintiff had been passed over and denied reassignment.  According to the memo, plaintiff had only requested reassignment to four facilities and indicated that plaintiff had failed to establish he had been passed over.  Furthermore, in another memo dated July 23, 2001, the Deputy Director of Labor Relations, responded to plaintiff's union representative.  He noted plaintiff's request for a transfer but pointed out that there was no evidence that any vacancy occurred in the position of Imam at the four facilities that plaintiff had requested (Ex. 260).

Assuming *arguendo* that the transfer denials could be considered adverse employment actions, plaintiff has simply failed to establish that any of the named defendants here engaged in any conduct to deny plaintiff a transfer.  Frankly, based on their interaction with plaintiff, they might well have not been opposed to such a transfer out of Southport.  So, to the extent plaintiff claims that the denial of a transfer was a discriminatory adverse employment action, plaintiff's claim fails because there is no proof that a vacancy existed or that transfer was denied on account of plaintiff's race or religion.  Moreover, there is no evidence of any personal involvement in the named defendants here.

CONCLUSION

Under Fed. R. Civ. Proc. 52(c), judgment for defendants is appropriate where the plaintiff has failed to make out a prima facie case.  On the basis of the foregoing, which together with my remarks in granting defendants' motion from the bench, constitutes my findings of fact and conclusions of law, I conclude that plaintiff has failed to establish a prima facie case, or otherwise to produce evidence that preponderates in his favor, with regard to his claims of disparate treatment, hostile work environment and retaliation.  The defendants' motion for judgment as a matter of law is granted, and the complaint is dismissed, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       November 5, 2014.

-8-